UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| CHERI LEONARD, | Case No.  5:24-cv-06280-EJD |
| Plaintiff, | |
| v. | **ORDER GRANTING MOTION TO DISMISS WITH LEAVE TO AMEND** |
| CVS PHARMACY, INC., et al., | Re: Dkt. No. 74 |
| Defendants. | |

This is a class action alleging that Defendants CVS Pharmacy, Inc. ("CVS"), Amneal Pharmaceuticals of New York, LLC, and Amneal Pharmaceuticals LLC (collectively, "Amneal") (all together, "Defendants") violated various California consumer protection laws by manufacturing and selling products containing benzene.  Second Am. Compl. ("SAC"), ECF No. 33.  Before the Court is Defendants' second motion to dismiss pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).  Mot., ECF No. 74.  This motion is fully briefed.  Opp'n, ECF No. 77; Reply, ECF No. 79.

After careful review of the relevant documents, the Court finds this motion suitable for decision without oral argument pursuant to Local Rule 7-1(b).  For the reasons explained below, the Court **GRANTS** Defendants' motion to dismiss with leave to amend.

I.    BACKGROUND

Plaintiff Cheri Leonard ("Plaintiff") alleges that Defendants' generic version of Mucinex ("Products") uses a carbomer that contains benzene in violation of several California torts, the California Consumer Legal Remedies Act ("CLRA"), and the California Unfair Competition Law ("UCL").

Case No.: 5:24-cv-06280-EJD
ORDER GRANTING MOTION TO DISMISS WITH LEAVE TO AMEND
1

United States District Court
Northern District of California

This is Defendants' second motion to dismiss. The Court granted their prior motion on September 29, 2025 ("Prior Order"), finding in relevant part that Plaintiff's claims were preempted by the Federal Food, Drug, and Cosmetic Act ("FDCA"). *Leonard v. CVS Pharmacy, Inc.*, No. 5:24-CV-06280-EJD, 2025 WL 2772598, at *1 (N.D. Cal. Sept. 29, 2025). Defendants were required to obtain pre-market Food and Drug Administration ("FDA") approval for the Products by submitting to the FDA an Abbreviated New Drug Application ("ANDAs"). *See id.* at 1–2. The ANDAs received and approved by the FDA identified the carbomer manufactured using benzene and included information showing the manufacturing processes for the Products and specifications for benzene in the carbomer and finished Products. *Id.* The Court held that, because the FDA found the Products complied with the FDCA, allegations that the products were "adulterated," "misbranded," "not equivalent to brand name Mucinex," and "illegal to sell" under California state law are preempted. *Id.* at 5 (citing *Daugherty v. Padagis US LLC*, 794 F. Supp. 3d 674 (N.D. Cal. 2025) (collecting cases holding that "§ 379r(a) preempts consumer claims seeking to mandate under state law disclosure of benzene or its risks"); *Howard v. Alchemee, LLC*, No. 2:24-CV-01834-SB-BFM, 2024 WL 4272931, at *9 (C.D. Cal. Sept. 19, 2024) (finding the plaintiffs' claim that defendants sold "an inherently adulterated product—amounting to a criminal act—" preempted because it was "inconsistent with the FDA's approval of" the ingredient at issue)).

Plaintiff filed an amended complaint on October 3, 2025. *See* SAC. Her new theory is that Defendants' manufacturing process violated the regulations known as Good Manufacturing Practices ("cGMPs"). Under this theory, Plaintiff argues the FDA's approval of the carbomer manufactured with benzene is irrelevant to whether Defendants proceeded to manufacture the Products in compliance with the cGMPs.

## II.   LEGAL STANDARD

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A plaintiff

Case No.: 5:24-cv-06280-EJD
ORDER GRANTING MOTION TO DISMISS WITH LEAVE TO AMEND

must "plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged," which requires "more than a sheer possibility that a defendant has acted unlawfully." *Id.* The court must "accept factual allegations in the complaint as true and construe the pleadings in the light most favorable to the nonmoving party." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008). However, courts "are not bound to accept as true a legal conclusion couched as a factual allegation." *Ashcroft*, 556 U.S. at 678.

If the court concludes that a Rule 12(b)(6) motion should be granted, the "court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (en banc) (quotation omitted).

## III.     DISCUSSION

### A.     Judicial Notice

The Court begins with Defendants' request for judicial notice and Plaintiff's opposition thereto. Pursuant to Federal Rule of Evidence 201, "[t]he court may judicially notice a fact that is not subject to reasonable dispute because it: (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned."

Defendants request the Court take judicial notice of twelve documents including FDA publications, FDA's approval database, and the ANDAs Amneal submitted to the FDA. Req. for J. Notice, ECF No. 76. Plaintiff opposes judicial notice of the facts contained within only four documents: two ANDAs submitted to the FDA by Amneal, Amneal's batch testing results, and Amneal's letter to the FDA identifying levels of benzene below 2ppm.[1] Opp'n to Req. for J. Notice, ECF No. 78; Reply in Supp. of Req. for J. Notice, ECF No. 80. Plaintiff argues these facts, particularly those measuring the level of benzene in the Products, are subject to reasonable

---

[1] Plaintiff does not oppose judicially noticing the existence of the documents. *See* Opp'n to Req. for J. Notice.

Case No.: 5:24-cv-06280-EJD
ORDER GRANTING MOTION TO DISMISS WITH LEAVE TO AMEND
3

dispute because the source of those facts is Amneal.

The Court agrees with Plaintiff. The Court will take judicial notice of the existence of these documents but will not accept as true Amneal's representation of the Products as described in these documents. The Court otherwise **GRANTS** Defendants' request for judicial notice. The Court finds the documents can be accurately and readily determined from public sources whose accuracy cannot reasonably be questioned.

### B.       Failure to State a Claim

Moving to Plaintiff's new claims, Plaintiff is correct that even FDA-approved products must be manufactured in compliance with the cGMPs, and Plaintiff's cGMPs claims are therefore not necessarily preempted by the FDCA. However, the Court finds Plaintiff has failed to allege facts sufficient to show that Defendants violated the cGMPs, or that these violations resulted in the presence of benzene in the Products. Plaintiff alleges that "the finished doses of the Product were contaminated with benzene as a result of systemic cGMP failures," *id.* ¶ 66, as "evidenced by the finished Products containing benzene," *id.* ¶ 24. In other words, the only fact Plaintiff alleges to support her allegations that Defendants violated the cGMPs is the presence of benzene itself. This is insufficient for at least two reasons.

First, the cGMPs do not regulate the presence of benzene. Thus, the presence of benzene alone does not support a claim that Defendants violated the cGMPs. Further, claims that the presence of *any* benzene in the Products necessarily violates the cGMPs invites conflict between cGMPs and the FDCA—the FDA cleared the Products so long as they contained under 2 parts per million ("ppm") of benzene.[2] *See, e.g., Kouyate v. L. Perrigo Co.*, No. 1:25-CV-1013, 2026 WL 591874, at *10 (W.D. Mich. Mar. 3, 2026) ("Insofar as [Plaintiff] alleges that [Defendant] must have violated the testing requirements in the cGMPs because otherwise it would have discovered BPO's widespread degradation, this theory is barred by the FDA's determination that BPO is

---

[2] As discussed above, the Court does not accept as true Defendants' assertion that the Products actually contained less than 2ppm of benzene. The Court does, however, take judicial notice of the fact that Amneal submitted, and the FDA approved, the ANDA indicating that the finished Products would have no more than 2ppm benzene.

Case No.: 5:24-cv-06280-EJD
ORDER GRANTING MOTION TO DISMISS WITH LEAVE TO AMEND
4

United States District Court
Northern District of California

safe.").[3]  And to the extent that Plaintiff argues the Products contained more than the FDA-approved 2ppm of benzene, this is also unsupported by the facts.  Plaintiff alleges only that "the level of benzene contamination in these carbomer formulations *can* be astronomically high, including as high as 5,000 [ppm]."  SAC ¶ 4 (emphasis added).

Second, Plaintiff does not allege any facts to show that Defendants violated any specific provision of the cGMPs.  Plaintiff cites four cGMPs that impose the following manufacturing requirements:

> (1) "[M]inimum current good manufacturing practice for methods to be used in, and the facilities or controls to be used for, the manufacture, processing, packing, or holding of a drug to assure that such drug meets the requirements of the act as to safety, and has the identity and strength and meets the quality and purity characteristics that it purports or is represented to possess."

SAC ¶ 54 (internal quotation marks omitted) (quoting 21 C.F.R. § 210.1(a)).

> (2) "[W]ritten procedures for production and process control designed to assure that the drug products have the identity, strength, quality, and purity they purport or are represented to possess."

*Id.* ¶ 56 (internal quotation marks omitted) (quoting 21 C.F.R. § 211.100).

> (3) "Laboratory controls [that] include the establishment of scientifically sound and appropriate specifications, standards, sampling plans, and test procedures designed to assure that components, drug product containers, closures, in-process materials, labeling, and drug products conform to appropriate standards of identity, strength, quality, and purity."

*Id.* ¶ 57 (internal quotation marks omitted) (quoting 21 C.F.R. § 211.160).

> (4) "Laboratory records [that] include complete data derived from all tests necessary to assure compliance with established specifications and standards, including examinations and assays" and a "statement of the results of tests and how the results compare with established standards of identity, strength, quality, and purity for the component, drug product container, closure, in-process material, or drug product tested."

*Id.* ¶ 58 (internal quotation marks omitted) (quoting 21 C.F.R. § 211.194(a)(6)).

However, after providing these citations, Plaintiff does not allege any facts to show *how*

---

[3] The Court **GRANTS** Defendants' unopposed motion to bring this recent decision to the Court's attention. ECF No. 83.

Defendants failed to manufacture the Products in accordance with these requirements—i.e., allegations to show how Defendants failed to keep "written procedures for production and process control," "laboratory controls," or "laboratory records."  Rather, Plaintiff relies only on the allegation that the presence of benzene itself means there must have been a violation of the cGMPs.  But the presence of benzene itself is insufficient to infer that the failure to keep "written procedures for production and process control," "laboratory controls," or "laboratory records" *caused* the presence of benzene.  *See, e.g., Kouyate*, 2026 WL 591874, at *10 ("And if instead [Plaintiff] alleges that a violation of the cGMPs caused BPO to degrade in some unique, unusual circumstances, he has not explained what that violation might have been or justified an inference that the violation affected the products he purchased.").

Further, the out-of-circuit district court case law Plaintiff cites to insinuate that the presence of benzene alone could support showing a violation of the cGMPs are inapplicable.  Nearly all cases did not involve products that, like here, required pre-market FDA approval; those courts did not contemplate the circumstances here where the FDA explicitly approved the use of an ingredient that resulted in the presence of some level of benzene.  *See, e.g., Pineda v. Lake Consumer Prods., Inc.*, No. CV 24-1074, 2025 WL 2698991, at *6–7 (E.D. Pa. Sept. 22, 2025); *Williams v. Galderma Lab'ys, L.P.*, No. 24 CV 2222, 2024 WL 4213220, at *5 (N.D. Ill. Sept. 17, 2024); *Barnes v. Unilever United States Inc.*, No. 21 C 6191, 2023 WL 2456385, at *5 (N.D. Ill. Mar. 11, 2023).  And the one case that involved a drug pre-approved by the FDA alleged that the defendants manufactured the drugs in a way that deviated from their ANDAs.  *In re Chantix (Varenicline) Mktg., Sales Pracs. & Prods. Liab. Litig. (No. II)*, 735 F. Supp. 3d 352, 388 (S.D.N.Y. 2024).  Plaintiff makes no such allegation here.

The Court therefore **GRANTS** Defendants' motion to dismiss.  Given that this is the second time the Court has granted a motion to dismiss, the Court is hesitant to grant leave to amend once more.  However, because Plaintiff raised a new theory not examined in the Court's Prior Order, the Court cannot determine whether further amendment would be futile at this time.  Accordingly, the Court will allow Plaintiff one more opportunity to amend.

Case No.: 5:24-cv-06280-EJD
ORDER GRANTING MOTION TO DISMISS WITH LEAVE TO AMEND

United States District Court
Northern District of California

United States District Court
Northern District of California

### C.      Personal Jurisdiction

The Court previously found it has personal jurisdiction over Defendant Amneal because Amneal purposefully availed itself of California's jurisdiction by selling to a distributor who maintained facilities in only four states, of which California is one. *Leonard*, 2025 WL 2772598, at \*3–4.  Amneal now submits evidence to argue that its distributor never sold Amneal's products through its California facility.  Plaintiff disputes both the accuracy of this assertion and the legal effect of it.

Because Plaintiff has failed to state a claim for the second time, the Court finds it appropriate to address Defendants' new personal jurisdiction arguments only if they become necessary in a subsequent motion to dismiss.  Given the disputed evidence regarding personal jurisdiction, the Court would be inclined to permit limited jurisdictional discovery.  Should Plaintiff choose not to file an amended complaint, or should Plaintiff be unable to cure the deficiencies identified in this Order, such discovery would have been an unnecessary waste of time and resources.

## IV.      CONCLUSION

Based on the foregoing, the Court **GRANTS** Defendants' motion to dismiss with leave to amend.  Should Plaintiff wish to file an amended complaint, she must do so by **May 5, 2026**.

**IT IS SO ORDERED.**

Dated: April 13, 2026

EDWARD J. DAVILA
United States District Judge

Case No.: 5:24-cv-06280-EJD
ORDER GRANTING MOTION TO DISMISS WITH LEAVE TO AMEND
7